```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALPHONSO SIMMONS,

                            Plaintiff,
                                                        DECISION AND ORDER

                                                        08-CV-6147L

            v.

CORRECTION OFFICER DAVID ADAMY,
et al.,

                            Defendants.
_____
```

## INTRODUCTION

Plaintiff Alphonso Simmons ("plaintiff"), proceeding *pro se*, brings this action against Attica Correctional Facility Corrections Officer David Adamy ("Adamy"), Department of Correctional Services ("DOCS") Deputy Superintendent of Programs Sandra Dolce ("Dolce"), and DOCS Deputy Commissioner and Counsel Anthony Annucci ("Annucci"). Plaintiff alleges that the defendants subjected him to unlawful retaliation pursuant to 42 U.S.C. §1983. (Dkt. #19). He requests money damages and injunctive relief.

Plaintiff commenced the instant action on April 2, 2008. (Dkt. #1). An amended complaint was filed August 31, 2009. (Dkt. #19). Plaintiff claims that during his incarceration at Attica, his constitutional rights were violated when: (1) the defendants retaliated against him for his pursuit of internal grievances and/or showed deliberate indifference toward such retaliation, by denying plaintiff reasonable access to Attica's law library; (2) defendants retaliated against plaintiff by interfering with plaintiff's access to religious services, via a schedule for law library access that conflicted with religious classes and observances; and (3) Adamy retaliated against plaintiff by issuing a false misbehavior report.

On July 15, 2011, the defendants moved for summary judgment dismissing plaintiff's claims, pursuant to Fed. R. Civ. Proc. 56. (Dkt. #55). On August 15, 2011, plaintiff cross moved for summary judgment. (Dkt. #58).

For the reasons set forth below, the defendants' motion (Dkt. #55) is granted, plaintiff's cross motion for summary judgment (Dkt. #58) is denied, and the amended complaint is dismissed.

## **DISCUSSION**

### I.  **Summary Judgment**

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Where the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999). However, "proceeding *pro se* does not otherwise relieve [an opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166 at *5 (S.D.N.Y. 2003). Those requirements include the obligation not to rest upon mere conclusory allegations or denials, but instead to set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).

### II.  **Plaintiff's Retaliation Claims**

In order to prove a First Amendment retaliation claim under Section 1983, a prisoner must show that: (1) he engaged in protected speech or activity; (2) the defendant took adverse action against him; and (3) there was a causal connection between the protected speech or activity and the adverse action. *See Espinal v. Goord*, 554 F.3d 216, 227 (2d Cir. 2009). An adverse action is "conduct that would deter a similarly situated individual of ordinary firmness from exercising . . .

constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (internal quotation marks omitted). To show retaliation, a plaintiff must demonstrate that constitutionally protected conduct was a substantial or motivating factor for a prison official's adverse action. *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). Although temporal proximity is often relied-upon for this purpose, the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," and courts are therefore free to draw permissible inferences based upon the "context of particular cases." *Espinal*, 554 F.3d 216 at 228. Nonetheless, courts approach prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotation marks omitted).

It appears undisputed that the plaintiff engaged in the protected activity of pursuing grievances at least six times between September 2007, just a few weeks after his arrival at Attica, and his transfer to another facility in February 2009, and that the alleged adverse actions occurred during the same time period. *See generally Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (pursuit of grievances is an activity that Section 1983 was meant to protect). It is equally undisputed that Adamy was the law library officer responsible for scheduling inmate access to Attica's law library, and that Dolce was the Deputy Superintendent of Programs empowered to direct Adamy to schedule inmates for "special access" (additional, prioritized access) to the law library.[1] However,

---

[1] Plaintiff makes no allegations of personal involvement by Annucci, except to allege that he was responsible for developing "policy for all [Department of Correctional Services] libraries." (Dkt. #58 at ¶4). Plaintiff makes no claim that the library policies allegedly established by Annucci are unconstitutional or otherwise deficient. As such, his claims against Annucci are dismissed in their entirety, with prejudice, for failure to state a claim. Even assuming *arguendo* that plaintiff had stated claims against Annucci, the Court would grant summary judgment to Annucci on those claims for the reasons discussed hereinafter.

I find that on the facts presented here, the plaintiff has failed to adequately plead or prove that any of the defendants' actions toward him were "adverse actions" within the meaning of Section 1983, or that they were taken against him under circumstances implying a retaliatory motive.

Initially, plaintiff offers no evidence that he was ever subjected to "conduct that would deter a similarly situated individual" from exercising his constitutional rights. *Gill*, 389 F.3d 379 at 381. As discussed in greater detail below, there is no evidence that plaintiff was treated differently from other inmates who had not pursued grievances, that he was afforded less than reasonable (or less than typical) access to the prison law library, that his free exercise rights were affected in more than de minimus fashion by the scheduling of his law library call-outs, that the allegedly false misbehavior report authored by Adamy was motivated by a desire to retaliate, or that he was unfairly disciplined or restricted as a result of it. There is simply no evidence that plaintiff was subjected to a materially adverse action which might have dissuaded a person of ordinary firmness from pursuing additional grievances. Although inferences must be drawn in favor of the non-moving party on a motion for summary judgment, "the non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Plaintiff's retaliation claims are accordingly dismissed.

### III.    Plaintiff's Constitutional Claims

Plaintiff characterizes the denial of access to the courts and denial of religious freedom as "adverse actions" in support of a retaliation claim, and not as standalone claims that his constitutional rights were violated. However, to the extent that the complaint could be construed to assert such claims, they are dismissed for the reasons that follow.[2]

---

[2] In contrast, plaintiff's claim concerning the false misbehavior report cannot be pursued as a standalone claim. *See Brooks v. Jackson*, 2013 U.S. Dist. LEXIS 136537 at *31-*32 (S.D.N.Y. 2013) ("it is well established that 'a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report' . . . the only way in which the filing of a false misbehavior report can violate a prisoner's constitutional rights is if the report is
(continued...)

A.      **Denial of Access to the Courts**

Plaintiff claims that during his incarceration at Attica, he was denied adequate access to the law library, which allegedly caused him to have to request multiple extensions of court-imposed deadlines relative to twelve separate civil and criminal matters in which he was involved. (Dkt. #58 at ¶4).

In order to state a claim for denial of access to the courts, "a plaintiff must allege that the defendant took or was responsible for actions that 'hindered [his] efforts to pursue a legal claim.'" *Davis v. Goord*, 2003 U.S. App. LEXIS 13030 at *7 (2d Cir. 2003), *quoting Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997). "Because law libraries and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure a reasonably adequate opportunity [to access the courts], prisoners must demonstrate 'actual injury' in order to have standing." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) (*quoting Lewis v. Casey*, 518 U.S. 343 at 351 (1996)).

Initially, the undisputed facts establish that plaintiff was not denied reasonable access to the prison law library. Defendants contend in a sworn affidavit, and plaintiff does not dispute, that during the year-and-a-half that plaintiff was incarcerated at Attica, he was scheduled for more than 100 law library "call-outs," and was granted "special access" (additional, priority law library access to meet upcoming court deadlines) by Dolce on eight different occasions. (Dkt. #28 at 5). According to Dolce's sworn responses to interrogatories, plaintiff received more frequent access to the law library during his incarceration at Attica than any other inmate, visiting the law library as many as 63 times in 7 months. (Dkt. #28 at 4, 5). By plaintiff's own reckoning, he received an average of at least one or two library call-outs per week (Dkt. #58 at ¶6, ¶40). I find that this frequency of access, which was undisputedly far greater than the average access afforded to inmates

---

[2](...continued)
filed in retaliation for the exercise of some other constitutional right, such as the filing of a grievance") (*quoting Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)).

at Attica, was inherently reasonable. Based on plaintiff's significant access to the library, his claim that he was denied reasonable access is frivolous.

Moreover, plaintiff offers no evidence that he was harmed by the lack of more frequent law library access. Although plaintiff does allege that delay in a matrimonial matter caused him to be "abandoned by a woman who was interested in marrying the plaintiff because of his inability to secure a divorce [more quickly]," (Dkt. #58 at ¶42), this allegation is unsupported hearsay, and the harm it describes is wholly speculative.

Because plaintiff was not denied reasonable access to the prison law library, his claim based on denial of access to the courts is dismissed.

### B. Denial of Religious Freedom

Plaintiff also alleges that the defendants denied him the ability to practice his religion while imprisoned at Attica.[3] Specifically, plaintiff alleges that during an approximately one-year period, Adamy scheduled many of plaintiff's library call-outs for times which conflicted with Muslim celebrations and/or classes, and that Dolce, although notified of the problem, failed to address it.

The First Amendment guarantees the right to the free exercise of religion. *See Cutter v. Wilkinson*, 544 U.S. 709, 719, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). The Religious Land Use and Institutionalized Persons Act ("RLUIPA") also protects inmates' rights to

---

[3] Although defendants move for summary judgment dismissing the complaint in its entirety, they appear to characterize the "adverse action" underlying plaintiff's retaliation claims as denial of access to the courts. However, construing the amended complaint liberally and granting plaintiff all favorable inferences as a pro se litigant, it is clear that the amended complaint also alleges as an adverse action the denial of religious liberty, based on the Hobson's choice allegedly presented to plaintiff: whether to make use of his library call-outs, or attend religious services allegedly essential to the practice of his Muslim faith, which were sometimes scheduled for the same times. *See generally Salahuddin v. Goord*, 467 F.3d 263, 278-79 (2d Cir. 2006) (questioning whether forcing an inmate to choose between law library access and attendance at religious meals and services could possibly serve a penalogical interest sufficient to justify the burden on the inmate's free exercise, and denying qualified immunity on that issue).

free exercise. RLUIPA prohibits the government from imposing a substantial burden on a prisoner's religious exercise unless it is the least restrictive means to further a compelling governmental interest. *See* 42 U.S.C. § 2000cc-l(a). For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine. *See Pugh v. Goord*, 571 F.Supp.2d 477, 504-05 (S.D.N.Y.2008); *Graham v. Mahmood*, 2008 U.S. Dist. LEXIS 33954 (S.D.N.Y. 2008).

The undisputed facts establish that there was some overlap between scheduled Muslim classes, services and observances, and plaintiff's law library call-out schedule (less than 20% of the time). However, plaintiff has failed to demonstrate that this overlap placed a substantial burden on his ability to practice his religion.

Initially, the Court notes that several of the occasions upon which plaintiff claims his library call-outs were deliberately scheduled to conflict with religious observances occurred during the Muslim holy month of Ramadan. Because Ramadan occupies an entire 29-30 day period in or around September, and because plaintiff was requesting library access during this time, it would have been impossible for Adamy or any other official to have scheduled plaintiff's September library call-outs at times which did not coincide with Ramadan.

As to the remaining thirteen occasions over an approximately one-year period when plaintiff's library call-outs allegedly conflicted with weekly Quranic Studies classes or Jumu'ah (a weekly worship service), I find that the scheduling of 13 occasions out of over 100 (13% of the time), which conflicted with religious services and classes being held two days out of every week (29% of the time) is not indicative of a deliberate effort to interfere with plaintiff's religious practices. Indeed, although there is no bright-line rule concerning the frequency with which missing religious services and classes becomes a burden of constitutional significance, limits on an inmate's religious exercise which prevent attendance at classes or services once a week or less have routinely

been held not to comprise a burden on religious exercise. *See e.g.*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1986) (regulation which prevents Muslin inmates from attending weekly services does not impinge on freedom of religion, where other religious opportunities are available); *Graham v. Mahmood*, 2208 U.S. Dist. LEXIS 33954 at *43-*44 (S.D.N.Y. 2008) (prison regulation resulting in inmate's inability to participate in weekly Islamic studies classes presents a de minimus burden on the inmate's free exercise of his religion). I therefore find that to the extent that plaintiff has alleged a claim of denial of religious freedom, that claim must be dismissed.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, I find that there are no material issues of fact, and that defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment dismissing the complaint (Dkt. #55) is granted, plaintiff's cross motion for summary judgment (Dkt. #58) is denied, and the amended complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 17, 2013